**WEHRI et al., Appellants,**

**v.**

**COUNTRYMARK, INC., Appellee.**

**AVERESCH et al., Appellants,**

**v.**

**COUNTRYMARK, INC., Appellee.***

[Cite as *Wehri v. Countrymark, Inc.* (1992), 82 Ohio App.3d 535.]

Court of Appeals of Ohio,
Allen County.

Nos. 1–92–55 and 1–92–56.

Decided Sept. 23, 1992.

*Papps & Connolly* and *Thomas G. Papps;* and *Thomas M. Connolly,* for appellants.

*Bugbee & Conkle* and *Tybo Alan Wilhelms;* and *Robert P. King,* for appellee.

HADLEY, Presiding Judge.

These two cases, consolidated in the trial court and herein, are presented to us on appeal from judgments in the Allen County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, CountryMark, Inc. ("appellee"), and against plaintiffs-appellants, Dennis Wehri et al. and Alphonse Averesch et al.

Appellants Wehri and Averesch were for many years employed by appellee. Appellee was engaged in milling and processing grain, in its Lima, Ohio facility. On July 29, 1987, while working in the feed grain portion of the plant, both appellants suffered severe injuries when two quickly consecutive fiery explosive blasts traveled through the plant. Also injured were the plant manager, Sam Kimpel, and plant superintendent, Fran Stechschulte, who were in the number one and number two positions at the Lima facility, respectively.

Initially, appellants filed their complaints in March 1988, pursuant to R.C. 4121.80, the intentional tort statute. In February 1989, the Allen County Court of Common Pleas granted summary judgment to appellee. That judgment was appealed to this court, *Wehri v. Countrymark, Inc.* (May 21, 1990), Allen App. Nos. 1–89–13 and 1–89–14, unreported, 1990 WL 68030, wherein the judgment of the trial court was affirmed. The case was subsequently appealed to the Ohio Supreme Court, *Wehri v. Countrymark, Inc.* (1991), 61 Ohio St.3d 719, 576 N.E.2d 789. The case was reversed and

remanded to the trial court on the authority of *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, which declared R.C. 4121.80 to be unconstitutional. Subsequently, appellee filed motions for summary judgment in the trial court and the trial court again granted appellee's motions for summary judgment against appellants. It is from these judgments that appellants assert four assignments of error.

Assignment of Error No. 1

"The trial court was in error in granting Summary Judgment against the Plaintiffs herein, contrary to the requirements of Civil Rule 56(C) that demands and requires that no Summary Judgment be granted unless it appears that reasonable minds can come to but one conclusion, and that conclusion must be against the party against whom the motion is made."

Appellants agree that the trial court applied the correct law; however, they argue that certain facts negate the possibility of summary judgment for appellee. Civ.R. 56 articulates that before summary judgment can be granted for a party, after construing the evidence most favorably to the nonmoving party, reasonable minds must be able to come to but one conclusion. Summary judgment shall be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56.

The Ohio Supreme Court has repeatedly defined the requirements necessary to prove an intentional tort.

"Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)" *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

The question becomes, viewing the record in a light most favorable to appellants, whether appellants presented any facts to show that appellee

intentionally subjected appellants to a dangerous workplace and that harm was substantially certain to occur to the employees?

Upon a review of the record, we find that appellants have not presented any evidence to show that appellee intentionally placed its workers in an area where harm was substantially certain to occur. Even if it is true that there is "a plethora of negligence" in this case, as stated in appellants' brief, unfortunately for appellants, this will not prove the requirements of an intentional tort by an employer. Without evidence that the employer was substantially certain that harm would inure to his employees, the elements of intentional tort have not been proven.

Second, we agree with the trial court that the evidence indicating that the persons holding the highest position and the second highest position at appellee's Lima facility were also injured in the accident diminishes the possibility that appellees committed an intentional tort. Also, we agree with the Court of Appeals for Sandusky County in *Pump v. Whirlpool Corp.* (May 13, 1988), Sandusky App. No. S–87–29, unreported, 1988 WL 47384, that the fact that there were no prior explosions evidencing a dangerous condition curtails the intentional tort claim. See, also, *Van Fossen v. Babcock & Wilcox Co.* (1988) 36 Ohio St.3d 100, 118, 522 N.E.2d 489. Finally, regardless of the admissibility of appellant's "expert" witness, Dr. Poling, the opinion stated therein does not evidence a viable intentional tort claim. Although Dr. Poling claims that a *secondary* explosion was a "virtual certainty," the relevant explosion is the *primary* explosion that occurred on July 29, 1987. Dr. Poling's only reference to the primary explosion's certainty indicated that the possibility of a primary explosion "was greatly increased" by inoperative and missing parts. However, "greatly increases" does not rise to the level of intentional, as defined in *Van Fossen, supra,* paragraph six of the syllabus and *Fyffe, supra,* paragraph two of the syllabus.

Without the evidence to meet the requirements of an intentional tort claim as enunciated by the Ohio Supreme Court, the trial court properly granted appellee's motion for summary judgment. This assignment of error is without merit.

### Assignment of Error No. 2

"The Trial Court was in error in the interpretation of the requirements of the law of intentional tort as defined by the recent Ohio Supreme Court decisions by ruling that if an upper level management employee is also injured, that that, alone, [*sic*] takes away the essential elements of Intentional Tort."

Appellants argue that the trial court's basis for finding there was no intentional tort was unreasonable. We first note that this was not the trial court's only basis for finding there was no intentional tort claim available to appellants in this case. As noted in Assignment of Error No. 1, there were other reasons why the trial court did not find any evidence supporting appellants' intentional tort claim, namely, there was no evidence supporting such a claim. Furthermore, two other facts refuted appellants' contention that appellee knew, with substantial certainty, an employee would suffer an injury because of a dangerous condition in the workplace. First, there had been no other similar accidents in the plant, as long as either of appellants had worked there. Second, the persons with the highest ranking positions, Kimpel and Stechschulte, in the Lima plant were working at the time of the explosions and at least one received medical attention. As the trial court notes, this fact is relevant because it is illogical to assume that the highest ranking persons in the Lima facility were willing to intentionally subject themselves to substantially certain injury, possibly death.

Moreover, appellants argue in their brief that no evidence exists showing Kimpel and Stechschulte were responsible for these conditions. To the contrary, in appellant Dennis Wehri's affidavit is the following statement: "* * * the company two managers present, on the site, Mr. Kimpel and Mr. Stechschulte. *These people were constantly aware of the conditions and walked through the plant daily.*" (Emphasis added.)

Inevitably, the highest ranking persons at a grain mill operation who are aware of conditions within the plant are necessarily responsible for those conditions or report to someone else outside the company who is responsible. Why bother making oneself aware of the condition and checking on them every day unless there was some sort of responsibility attached?

For the above-stated reasons, this assignment of error is without merit.

## Assignment of Error No. 3

"The Trial Court was in error in ignoring or not understanding the importance of the Affidavits filed by the Appellants wherein each element of the requirements of the Intentional Tort law is addressed, including the removal of equipment safety guards as creating a 'prima facie' case."

Appellants argue that although R.C. 4121.80 has been declared unconstitutional *in toto*,[1] the reasoning of a former provision in R.C. 4121.80—that an employer's removal of equipment safety guards and a resulting injury

---

1. *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph two of the syllabus.

create a presumption of an intentional tort—still remains. We disagree, and so does the Ohio Supreme Court. Prior to its decision finding R.C. 4121.80 unconstitutional, the Ohio Supreme Court interpreted the relevant provision alluded to by appellant in this assignment, in *Fyffe, supra.* The court stated that it may consider the employer's removal of safety guards along with all other evidence in deciding a motion for summary judgment. *Van Fossen, supra,* 36 Ohio St.3d at 118–119, 522 N.E.2d at 506. Thus, if such evidence is presented it is not the only evidence to consider; rather, all relevant evidence is to be considered collectively. *Id.* at 119, 522 N.E.2d at 506.

Regardless, R.C. 4121.80 has been declared to be unconstitutional by the Ohio Supreme Court and, therefore, we need not follow any of the former provisions.

For the above-stated reasons, this assignment of error is without merit.

### Assignment of Error No. 4

"The Trial Court was in error in also granting Summary Judgment on arguments and grounds that were specifically refused by the Supreme Court of Ohio on a Motion for Rehearing of the instant case."

■ Appellants argue that appellee could not raise the same arguments in its motion for summary judgment on remand that were made in its motion for reconsideration before the Ohio Supreme Court. The effect of appellee making the same arguments, appellants argue, is to "veto" the action of the Supreme Court of Ohio. Such reasoning is not persuasive. Based upon a review of appellee's motion for summary judgment on remand and the trial court's subsequent judgment entry, the trial court followed the dictates of the Ohio Supreme Court and decided the case *sub judice* on the merits.

This assignment of error is without merit.

The judgments of the trial court are affirmed.

*Judgments affirmed.*

SHAW and THOMAS F. BRYANT, JJ., concur.