OPINION
{¶ 1} Plaintiffs-appellants, Artis Johnson (individually, "plaintiff") and Orencia Johnson, appeal from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"). Because the trial court did not err in finding plaintiffs failed to prove ODRC committed an intentional tort against plaintiff in the course of plaintiff's employment with ODRC, we affirm.
 {¶ 2} On December 1, 2000, plaintiffs filed a complaint against ODRC alleging ODRC had committed an intentional tort against plaintiff in the course of plaintiff's employment with ODRC, ODRC had violated the public policy embraced in R.C. 4101.12, and Ornecia Johnson has suffered a loss of consortium as a result of ODRC's actions.
 {¶ 3} After ODRC had filed an answer to the complaint, the court set the matter for a status conference. As a result of the status conference, the court bifurcated the case, noting that the liability portion of the case was ready for trial. Prior to trial, plaintiffs voluntarily dismissed their public policy claim.
 {¶ 4} On February 26, 2002, the matter was tried before Judge Russell Leach, who died before any decision or judgment entry was filed. At the status conference called to address how to proceed with the case, the court presented three options to the parties: (1) conduct a new trial, (2) submit the case to a staff attorney, who was present during the trial, for a magistrate's decision, or (3) submit the case to one of the judges of the court. Both parties selected the second option and, on September 24, 2002, the trial court appointed the staff attorney to serve as a magistrate in the matter.
 {¶ 5} On October 22, 2002, the magistrate issued a decision finding "plaintiffs have failed to prove their intentional tort claim by a preponderance of the evidence." (Magistrate's Decision, 5.) Moreover, concluding the consortium claim is derivative, the magistrate determined that since "plaintiffs have failed to prove their intentional tort claim, the loss of consortium claim must also be denied." (Magistrate's Decision, 5-6.)
 {¶ 6} Plaintiffs filed objections to the magistrate's decision on November 20, 2002. The trial court, however, filed a judgment entry on November 26, 2002, noting that because plaintiffs' objections were untimely filed, the court would not consider them. Further, concluding the magistrate's decision had no error of law or other defect on the face of it, the court adopted the magistrate's decision and rendered judgment in favor of ODRC. Plaintiffs appeal, assigning the following errors:
[I.] Trial Court erred in denying plaintiff [sic] cause of action for intentional tort.
[II.] Trial Court erred in denying plaintiff [sic] cause of action for loss of consortium.
 {¶ 7} Because plaintiffs' two assignments of error are interrelated, we address them jointly. Together they assert the trial court erred in finding no merit in plaintiffs' claim for intentional tort and, accordingly, in the claim for loss of consortium.
 {¶ 8} Preliminarily, however, we note that plaintiffs' assignments of error raise a procedural issue arising from the parties' agreement to utilize the services of a magistrate to reach a decision on the evidence presented at trial. Pursuant to Civ.R. 53(E)(3)(a), "[w]ithin fourteen days of the filing of a magistrate's decision, a party may file written objections to the magistrate's decision." To the extent a party objects to the magistrate's findings of fact, the objections "shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available." Civ.53(E)(3)(b). The failure to file objections carries potentially severe consequences: "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Id.
 {¶ 9} Under those parameters, plaintiffs' challenge to the trial court's decision is more limited than the arguments in their brief suggest. Initially, plaintiffs failed to file objections within the 14 days provided by Civ.R. 53(E)(3)(a). As a result, they may not assign as error the court's adoption of any finding of fact or conclusion of law. Civ.R. 53(E)(3)(b). Moreover, even if, in exercise of its discretion, the trial court had considered the objections timely, plaintiffs failed to provide the court with a transcript of the evidence in support of their objections to the magistrate's findings of fact. Because plaintiffs failed to submit a transcript with the objections, this court is precluded from considering the transcript of the hearing that plaintiffs submitted with the appellate record. State ex rel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 730; Miller v. Miller (Mar. 5, 2002), Van Wert App. No. 15-01-10.
 {¶ 10} In accordance with the cited authority, we will not review the trial transcript of the evidence, because the trial court did not have the opportunity to review the transcript before adopting the magistrate's decision. Even though plaintiffs also waived any error in the magistrate's conclusions of law by their failure to file timely objections, in the exercise of our discretion we will consider the magistrate's decision, adopted in the trial court, and determine whether the magistrate's findings of fact support the legal conclusions the magistrate reached.
 {¶ 11} According to the magistrate's decision, on January 1, 2000, plaintiff was a corrections officer with ODRC and was working in "4-house" with corrections officer Robert Rebecca. At approximately 9:30 a.m., Rebecca attempted to wake inmate Robinette in his cell, because Robinette was late for work. Robinette refused to cooperate. When Rebecca reported the incident to Captain Foulty, Foulty told Rebecca to take Robinette to the "quiet area," to handcuff him, and to take him to segregation. Rebecca took Robinette to the quiet area, and he told him to turn around and face the wall; Robinette, however, suddenly pushed off from the wall in an aggressive manner. Rebecca was able to pin Robinette to the floor, when plaintiff and Lt. George Terry also intervened.
 {¶ 12} Terry kneeled to the floor to talk to Robinette and to calm him. Robinette explained that he could not comply with Rebecca's orders to put his hands behind his back to be cuffed because the corrections officers had pinned him to the ground. In response to Terry's inquiry, Robinette said he would agree to be handcuffed if he were permitted to stand. Terry ordered Rebecca and plaintiff to allow Robinette to rise. Initially Rebecca refused, stating that Robinette needed to be handcuffed before he stood. Terry, however, repeated his order. As Rebecca and plaintiff released Robinette, Robinette escaped their control. Plaintiff attempted to prevent Robinette from attacking Rebecca, and "during the struggle, Robinette pushed plaintiff into a bank of telephones and a restroom sink." (Magistrate's Decision, 2.) With help from other corrections officers and inmates, plaintiff ultimately subdued Robinette.
 {¶ 13} The magistrate noted that the review committee during a "use of force review" concluded Terry had used extremely poor judgment in ordering the officers to release an unrestrained inmate. Indeed, the magistrate noted plaintiff's testimony that "he was trained not to let a hostile inmate stand before being secured." (Magistrate's Decision, 3.) As a result, when Terry first ordered Rebecca to permit Robinette to stand, Rebecca "refused because Robinette had threatened both him and plaintiff. Rebecca obeyed the second order after Terry assured him that Robinette would comply and that it was `his call' to make." Id.
 {¶ 14} The magistrate noted, in contrast, Terry's testimony that he did not hear Robinette threaten the corrections officers, and he did not know Foulty had ordered Robinette handcuffed. According to Terry, when he gave the order to allow Robinette to stand, Terry felt Robinette was calm and would comply, and the matter thus would resolve quickly. Moreover, Terry stated he had expected the corrections officers to maintain control of Robinette as Robinette stood.
 {¶ 15} "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Van Fossen v. Babcock Wilcox Co. [1988], 36 Ohio St.3d 100,522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained)." Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus. Here, the trial court concluded plaintiff failed to present sufficient evidence regarding the second prong.
 {¶ 16} To satisfy the second prong of the Fyffe test, plaintiff had to produce evidence that ODRC knew of the substantial certainty of injury to plaintiff as a result of the dangerous condition. "[E]ven if an injury is foreseeable, and even if it is probable that the injury would occur if one were exposed to the danger enough times, `there is a difference between probability and substantial certainty.'" Heard v. United Parcel Serv. (July 20, 1999), Franklin App. No. 98AP-1267, appeal not allowed, 87 Ohio St.3d 1450. "[T]he mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe at paragraph two of the syllabus. Unless the employer actually intends to produce the harmful result or knows that injury to its employee is certain or substantially certain to result from the dangerous instrumentality or condition, the employer cannot be held liable. Id. Accordingly, an intentional-tort action against an employer is not shown simply because a known risk later blossoms into reality. Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100. Rather, "the level of risk-exposure [must be] so egregious as to constitute an intentional wrong." Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169,172, rehearing denied, 44 Ohio St.3d 712. See, also, Caldwell v. Buckeye Steel Castings Co. (Mar. 24, 1998), Franklin App. No. 97APE07-963, appeal not allowed, 82 Ohio St.3d 1477.
 {¶ 17} Although the magistrate's decision includes recitation of the testimony in the findings of fact, both support the magistrate's determination that plaintiffs have failed to prove the second prong of the test for an intentional tort. As the magistrate's decision reflects, the magistrate found credible Terry's testimony that at the time he gave the order to allow Robinette to stand, he believed Robinette had calmed and would comply with the order to be handcuffed, and that allowing Robinette to stand would be the best way to handle a tense situation. As a result, not only did Terry not believe harm was substantially certain, to the contrary, he believed he was pursuing an appropriate course to prevent injury to anyone.
 {¶ 18} Without question, review of the situation indicates Terry exercised poor judgment under all of the circumstances. Indeed, by ordering Robinette and plaintiff to act contrary to their training, Terry created a risk of injury to plaintiff. Nonetheless, even though injury was a possibility or even a probability, it was not a substantial certainty under the facts the magistrate determined. Accordingly, the trial court did not err in finding plaintiffs failed to prove a claim for intentional tort against ODRC.
 {¶ 19} Moreover, the trial court properly concluded that Orencia Johnson's claim for loss of consortium is derivative in that it is dependent on ODRC having committed a legally cognizable tort upon plaintiff. Because plaintiffs failed to prove ODRC committed a tort against plaintiff, their consortium claim also fails. Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 93.
 {¶ 20} Given the foregoing, we overrule plaintiffs' two assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
PETREE, P.J., and BROWN, J., concur.