[Cite as *M.S. v. Harvey*, 2014-Ohio-4236.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

M.S., A MINOR
BY SASHA SALSGIVER,
HER MOTHER AND NEXT FRIEND

      Plaintiff-Appellant

-vs-

DAVID HARVERY, ET AL.

      Defendants-Appellees

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Sheila G. Farmer, J.
Hon. John W. Wise, J.

Case No. 13CA105

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas, Case No. 2009-CV-0950 |
| JUDGMENT: | Affirmed in part, Reversed in part and Remanded |
| DATE OF JUDGMENT ENTRY: | September 22, 2014 |
| APPEARANCES: | |

For Plaintiff-Appellant

DARRELL L. HECKMAN
Harris, Meyer, Heckman & Denkewalter
One Monument Square, Suite 200
Urbana, Ohio 43078

For Defendants-Appellees
Dianna Kochheiser and Russell Harvey

TERRENCE J. KENNEALLY
SEAN M. KENNEALLY
River Terrace Building
19111 Detroit Road, Ste. 200
Rocky River, Ohio 44116

For Defendants-Appellees
J. Hudson Thayer & Grace Brethren Church

DAVID HARVEY, PRO SE
#A582750
P.O. Box 59
Nelsonville, Ohio 45764

G. MICHAEL CURTIN
STUART D. BAKER
CURTIN & KMETZ, LLP
159 South Main Street, Suite 920
Akron, Ohio 44308

*Hoffman, P.J.*

{¶1} Plaintiff-appellant M.S., a minor by Sasha Salsgiver, her mother and next friend, appeals the November 8, 2013 Judgment Entry on Jury Verdict, which entered judgment in her favor and against defendant-appellee David Harvey ("Harvey") in the amount of $175,000, and which memorialized the trial court's granting directed verdict in favor of defendants-appellees Dianna Harvey Kochheiser ("Kochheiser) and Russell Harvey ("Russell Harvey"). Appellant also appeals the trial court's March 1, 2011 Judgment Entry which granted summary judgment in favor of defendants-appellees J. Hudson Thayer ("Pastor Thayer") and Grace Brethren Church ("the Church").

STATEMENT OF THE FACTS AND CASE

{¶2} Harvey and his wife, Carol Harvey, are the elderly parents of four adult children, to wit: Kochheiser, Russell Harvey, Steven Harvey, and Ken Harvey. Kochheiser and her husband, Jerry, have two daughters, Christine Kochheiser and Kelly Kochheiser, who are adults. Russell Harvey and his wife, Laurie, have one daughter, Jordan Harvey, who is also an adult.

{¶3} Harvey sexually abused Kochheiser when she was approximately 9 years old. Kochheiser's daughters, Christine Kochheiser and Kelly Kochheiser, were, likewise, sexually abused by Harvey when they were 8 or 9 and 5 or 6 years old, respectively. After her daughters disclosed Harvey's abuse, Kochheiser contacted Russell Harvey as his daughter Jordan was close in age and relationship with Christine and Kelly. Russell Harvey learned Jordan had also been sexually abused by Harvey.

{¶4} As a result of their daughters' disclosures, Kochheiser, Russell Harvey, and their spouses met with Pastor Thayer. Pastor Thayer is the pastor of the Church.

Harvey and Kochheiser attended the Church. Pastor Thayer suggested they handle the matter within the family. Kochheiser, her husband, Russell Harvey, and his wife then confronted Harvey. This occurred sometime during the early or mid-1990's. No outside authorities were ever contacted.

{¶5} In 1991, Ken Harvey married Yolanda Harvey. Yolanda Harvey had a daughter, Sasha, who was then six years old. In 2001, Sasha married Joe Salsgiver. Christine Kochheiser served as a bridesmaid. Kelly Kochheiser and Jordan Harvey were the book attendants. The entire Harvey family attended the wedding. Ken and Yolanda Harvey divorced sometime around 2002. Despite her mother's divorce, Sasha maintained a relationship with Ken Harvey and the rest of the Harvey family, celebrating birthdays and holidays together.

{¶6} Sasha gave birth to M.S on December 27, 2003. The Harvey family attended the baby shower. After M.S. was born, Sasha returned to working full-time. Rather than place M.S. in daycare, Sasha relied upon family to care for her daughter while she worked. Initially, Harvey and his wife watched M.S. two or three days/week while Sasha's mother-in-law and Ken Harvey alternated watching the child the remaining days of the week. After Harvey suffered a stroke in June, 2008, he and his wife insisted they continue to watch M.S., but Sasha and her husband decided it should only be one day/week. Kochheiser advised Harvey and Carol they should not be watching any children at all because of their physical health. Kochheiser became aware Harvey and Carol were watching M.S. by June, 2008, at the latest.

{¶7} On May 29, 2009, Sasha and Joseph Salsgiver both received calls from Carol Harvey informing them something had happened to M.S. Joseph Salsgiver

arrived at the Harvey home first. He found M.S. crying uncontrollably. M.S. told her father Harvey had touched her bottom with his bottom. A medical examination confirmed sexual abuse.

{¶8} On June 22, 2009, M.S., a minor, through her mother and next friend, Sasha Salsgiver, filed a complaint, naming Appellees as defendants. As against Harvey, the complaint alleged he sexually abused M.S. on a number of occasions over a seventeen month period of time. As against Kochheiser and Russell Harvey, the complaint asserted they had special knowledge their father, Harvey, had sexually abused other young female family members in the past, but negligently failed to warn or report the abuse, thereby proximately causing injury to M.S. As against Pastor Thayer, the complaint alleged the Pastor knew of Harvey's prior acts of sexual abuse, but negligently failed to report and warn of the abuse. The claim against the Church was predicated upon negligent supervision.

{¶9} Pastor Thayer and the Church filed a motion for summary judgment, asserting summary judgment was appropriate as Pastor Thayer and the Church had no actual or constructive knowledge of the alleged sexual abuse. The motion for summary judgment was supported by the affidavit of Pastor Thayer. Therein, Pastor Thayer averred, "at no time, did he ever engage in any conversations or counseling with co-Defendant David Harvey relative to the allegations of sexual misconduct with [M.S.]." The Pastor further stated neither he nor the Church "had any knowledge, either actual or constructive, of any alleged sexual misconduct between Defendant David Harvey and [M.S.]."

{¶10} M.S. filed a brief in opposition, which was supported by the affidavits of Ken Harvey and Deandrea Whyel. In his affidavit, Ken Harvey, Harvey's son and M.S.'s step-grandfather, averred he knew "Pastor Thayer had counseled David Harvey about his sexual perversions toward minors." Ken Harvey further stated he knew "Pastor Thayer had been counseling David Harvey about the incidents in the Complaint, because David Harvey informed Carol Harvey {David's wife} of this during Memorial weekend of 2009, when I was present at their home." In her affidavit, Deandrea Whyel, who was present at Harvey's competency hearing in the criminal action, averred her "firm belief", based upon a conversation between a former pastor of the Church and the Salsgivers, "Thayer engaged in conversations and/or counseled David Harvey about the issues contained in the Complaint", and "Thayer had knowledge of the alleged sexual conduct between David Harvey and [M.S.]."

{¶11} Pastor Thayer and the Church filed a motion to strike the affidavits of Ken Harvey and Deandrea Whyel, arguing such were improper Civ. R. 56(E) evidence as the affidavits contained only hearsay evidence and/or knowledge based upon hearsay. The trial court granted the motion to strike.

{¶12} Via Judgment Entry filed March 1, 2011, the trial court granted summary judgment in favor of Pastor Thayer and the Church. The trial court found neither Pastor Thayer nor the Church had actual or constructive knowledge that the alleged abuse of M.S. was occurring.

{¶13} The matter proceeded to jury trial against the remaining defendants. At the conclusion of M.S.'s case-in-chief, the trial court granted directed verdict in favor of Kochheiser and Russell Harvey. The trial court found, as a matter of law, Kochheiser

and Russell Harvey had no duty to warn M.S. or her parents of the potential risk of harm as a special relationship did not exist. Thereafter, the trial court instructed the jury as to the claims against Harvey. Harvey was not present and was not represented by counsel. The jury returned a verdict against Harvey, and awarded M.S. $175,000 in compensatory damages on count one, and $175,000 in compensatory damages on count two, plus court costs and attorney fees.

{¶14} On October 31, 2013, the trial court issued a judgment entry which awarded attorney fees of thirty percent of any and all amounts recovered by M.S. Via Judgment Entry filed November 8, 2013, the trial court memorialized its ruling granting directed verdict in favor of Kochheiser and Russell Harvey, and granted judgment in favor of M.S. against Harvey in the amount of $175,000, plus costs. This appeal ensued.

{¶15} M.S. raises the following assignments of error:

{¶16} "I. THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT AGAINST PLAINTIFF IN FAVOR OF DEFENDANTS DIANNA KOCHHEISER AND RUSSELL HARVEY BECAUSE THE DEFENDANTS DID BREACH A DUTY TO WARN PLAINTIFF'S PARENTS OF THE DEFENDANTS' SPECIALIZED KNOWLEDGE OF THE FORESEEABLE RISK OF IMMINENT SEXUAL ABUSE TO A CHILD OF TENDER YEARS.

{¶17} "II. THE TRIAL COURT ERRED IN DIRECTING A VERDICT FOR DEFENDANTS RUSSELL HARVEY AND DIANNA KOCHHEISER BECAUSE THE DEFENDANTS DID BREACH A DUTY TO WARN PLAINTIFF OF DEFENDANTS' SPECIALIZED KNOWLEDGE OF THE FORESEEABLE RISK OF IMMINENT

PHYSICAL HARM TO M.S. BECAUSE OF THEIR SPECIAL RELATIONSHIP TO M.S. AND DAVID HARVEY.

{¶18} "III. THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT FOR DEFENDANTS RUSSELL HARVEY AND DIANNA KOCHHEISER BECAUSE THE ISSUE OF BREACH OF DUTY OF REASONABLE CARE WAS A JURY ISSUE.

{¶19} "IV. THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT FOR DEFENDANTS RUSSELL HARVEY AND DIANNA KOCHHEISER BECAUSE DEFENDANTS HAD A DUTY TO REPORT A FELONY, WHICH THEY BREACHED, AND PLAINTIFF WAS ENTITLED TO HAVE A JURY DECIDE THE ISSUES OF BREACH OF DUTY, PROXIMATE CAUSE AND DAMAGES.

{¶20} "V. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANT J. HUDSON THAYER BECAUSE DEFENDANT THAYER HAD A DUTY TO REPORT A FELONY, AND PLAINTIFF WAS ENTITLED TO HAVE A JURY DECIDE THE ISSUES OF BREACH OF DUTY, PROXIMATE CAUSE AND DAMAGES.

{¶21} "VI. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANT J. HUDSON THAYER BECAUSE DEFENDANT THAYER WAS A MANDATORY REPORTER UNDER R.C. §2151.421, AND HAD A DUTY TO REPORT KNOWN OR SUSPECTED CHILD ABUSE TO THE APPROPRIATE AUTHORITIES, WHICH HE FAILED TO DO, AND THE JURY WAS ENTITLED TO DECIDE PROXIMATE CAUSE AND DAMAGES.

{¶22} "VII. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT J. HUDSON THAYER BECAUSE DEFENDANT HAD A DUTY TO REFRAIN FROM ADVISING THE CO-DEFENDANTS TO VIOLATE THE LAW.

{¶23} "VIII. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANT GRACE BRETHREN CHURCH.

{¶24} "IX. THE TRIAL COURT ERRED IN ENTERING JUDGMENT FOR PLAINTIFF AT VARIANCE WITH THE JURY VERDICT."

I, II

{¶25} M.S.'s first and second assignments of error challenge the trial court's granting directed verdict in favor of Kochheiser and Russell Harvey upon finding they did not have a duty to warn. M.S. asserts Kochheiser and Russell Harvey breached a duty to warn because of their specialized knowledge of the foreseeable risk of imminent abuse to a child of tender years, and because of their special relationships with M.S. and Harvey, individually.

{¶26} The standard of review for the grant or denial of a motion for a directed verdict is whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. *Brown v. Guarantee Title & Trust/Arta* (Aug. 28, 1996), Fairfield App.No. 94-41, citing *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957, 961.

{¶27} In Ohio, a duty to warn or a duty to protect third parties does exist if a special relationship has been established. In *Estates of Morgan v. Fairfield Family Counseling Ctr.* (1997), 77 Ohio St.3d 284, 293, 673 N.E.2d 1311, 1319, the Ohio

Supreme Court specifically discussed special relationships and the duty to control, and held:

Generally, a defendant has no duty to control the violent conduct of a third person as to prevent that person from causing physical harm to another unless a "special relation" exists between the defendant and the third person or between the defendant and the other. In order for a special relation to exist between the defendant and the third person, the defendant must have the ability to control the third person's conduct. *Id.,* at paragraph one of the syllabus.

**{¶28}** Kochheiser and Russell Harvey insist they had no legal obligation to report Harvey's past abuse to M.S. and her parents.  We disagree.  We find a special relationship existed between Kochheiser and Russell Harvey, and their father, which gave rise to such a duty.  Kochheiser and Russell Harvey are Harvey's adult children and they acted as his power of attorney.  They exercised some control over Harvey's affairs.

**{¶29}** We also find a special relationship existed between Kochheiser and Russell Harvey, and M.S.  Although not blood relatives, the parties were part of a family.  They were involved in each others' lives, they celebrated holidays and special events together, and provided assistance to one another in times of need.  We do not find a direct blood relationship to be the sole determinative factor in establishing a special relationship.

**{¶30}** Furthermore, Kochheiser and Russell Harvey had specialized knowledge of the potential risk of harm to M.S., a child of tender years, who whey knew was being

placed in Harvey's care.  Kochheiser and Russell Harvey were two of the few people who knew of Harvey's prior sexual abuse of minors.  They were aware Harvey and his wife were babysitting M.S. at least one year prior to M.S.'s disclosure of the abuse.  In fact, they urged Harvey not to babysit M.S.  They were also aware the only other adult present, their mother, Carol Harvey, was blind and was unable to protect M.S.

{¶31} Based upon the foregoing, we find the trial court erred in granting directed verdicts in favor of Kochheiser and Russell Harvey on the claim of breach of duty to warn based upon the unique combination of their special relationship and specialized knowledge as presented by the facts of this case.

{¶32} Assignments of error one and two are sustained.

III

{¶33} In her third assignment of error, M.S. maintains the trial court erred in granting directed verdict in favor of Koshheiser and Russell Harvey on the issue of breach of duty of reasonable care.

{¶34} Given our disposition of M.S.'s first and second assignments of error, we sustain this assignment of error.  The issue of breach of duty will be left for the trier-of-fact to determine.

IV

{¶35} In her fourth assignment of error, M.S. contends the trial court erred in granting directed verdict in favor of Kochheiser and Russell Harvey on the issue of their duty to report a felony.

{¶36} R.C. 2921.22(A) provides: " (A)(1) Except as provided in division (A)(2) of this section, no person, knowing that a felony has been or is being committed, shall

knowingly fail to report such information to law enforcement authorities." However, disclosure of information is not required when "[t]he information would tend to incriminate a member of the actor's immediate family." R.C. 2921.22(G)(2).

{¶37} Kochheiser and Russell Harvey were not required to disclose information of the felony pursuant to R.C. 2921.22(G)(2); therefore, we find the trial court did not err in granting directed verdict on this claim.

{¶38} Assignment of error four is overruled.

V, VI, VII, VIII

{¶39} In her fifth, sixth, seventh, and eighth assignments of error, M.S. challenges the propriety of the trial court granting summary judgment in favor of Thayer and the Church.

{¶40} The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273-274. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. *Id.* at 293, 662 N.E.2d at 273-274.

{¶41} M.S. asserted a negligence claim against Thayer. The complaint reads:

{¶42} "37. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

**{¶43}** "38. Defendant, J. Hudson Thayer is a Pastor of the Grace Brethren Church located at 531 Marion Avenue, Mansfield, Ohio, which Defendant, David Harvey, the Plaintiff and the Plaintiff's mother are and/or were active members.

**{¶44}** "39. Defendant Harvey was seeking counseling from Thayer for sexual behavior with minor children.

**{¶45}** "40. Thayer has a duty to protect against a known or potential risk of harm towards minor children.

**{¶46}** "41. Thayer deviated from this duty by not informing the Plaintiff's mother that her child is at risk of sexual harm.

**{¶47}** "42. That without any negligence on the part of the Plaintiff, but solely by the negligence of Thayer he failed to act in due care.

**{¶48}** "43. As a direct and proximate result of Thayer's negligence, Plaintiff has been and continues to be damaged by Thayer's actions in an amount to be determined at trial."

**{¶49}** As against the Church, M.S. asserted a claim of negligent supervision. The complaint reads:

**{¶50}** "44. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

**{¶51}** "45. Defendant, Grace Brethren Church is the employer of Thayer.

**{¶52}** "46. Within the scope of Thayer's employment with the Church, Thayer is to provide pastoral counseling.

**{¶53}** "47. Church failed its duty to exercise proper control over Thayer.

**{¶54}** "48. The Church knew or should have known from their past knowledge of Thayer's counseling services in this regard.

**{¶55}** "49. That the failure to exercise such control over Thayer posed an unreasonable risk that other people will be injured."

**{¶56}** Pastor Thayer and the Church asserted they were entitled to summary judgment as there was no question of fact regarding the alleged acts of negligence. Specifically, Pastor Thayer and the Church maintain they had no actual or constructive knowledge Harvey was sexually abusing M.S.; therefore, they cannot be liable on the theory of negligence. In support of this position, Pastor Thayer and the Church submitted Thayer's own affidavit, in which the pastor avers:

**{¶57}** "1) Pastor Thayer never engaged in any conversations or counseling with Defendant David Harvey relative to the allegations of sexual misconduct with [M.S.];

**{¶58}** "2) Pastor Thayer never had any knowledge, either actual or constructive, of any alleged sexual misconduct between Defendant David Harvey and [M.S.] at any relevant time noted in the [Complaint]; * * *

**{¶59}** "3) Pastor Thayer did not know of the allegations of sexual conduct with [M.S.] until just a few weeks before the within lawsuits were filed when he was approached by local law enforcement who was investigating the allegations; * * *

**{¶60}** "4) Grace Brethren Church did not have any knowledge, either actual or constructive, of the alleged sexual misconduct with [M.S.] at any relevant time noted in the [Complaint] until after the lawsuits were filed. * * *"

**{¶61}** We find Pastor Thayer's affidavit goes only to negate the issue of his duty to report sexual misconduct committed by Harvey toward M.S. It does not address the

claim of his alleged duty to warn M.S.'s mother as contained in paragraph No. 41 of the complaint. Therefore, we find it was inappropriate for the trial court to grant Pastor Thayer and the Church summary judgment on Appellants' complaint based thereon.

{¶62} Nowhere in the complaint did M.S. specifically assert a claim Pastor Thayer violated a duty to report under R.C. 2151.421. Nor did M.S. specifically assert a claim Pastor Thayer violated a duty to refrain from advising co-defendants not to report thereunder.

{¶63} However, the complaint did raise a claim of negligence against Pastor Thayer based upon his failure to warn M.S.'s mother of the threat Harvey posed. As to that claim, we find R.C. 2151.421 instructional. It requires certain persons to report known or suspected abuse or a threat of abuse, and provides in pertinent part:

"(A)(1)(a) No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and *knows, or has reasonable cause to suspect* based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age *has suffered or faces a threat of suffering* any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division. * * *" (Emphasis added).

**{¶64}** In his affidavit, Pastor Thayer states he had no knowledge of any alleged sexual misconduct between Harvey and M.S. As such, he had no duty to M.S. to report Harvey to the entity or persons specified in the statute. Furthermore, the record is devoid of any evidence establishing Pastor Thayer knew Harvey was babysitting M.S. In the absence of any such evidence, we find the pastor did not have a duty to warn M.S.'s mother as he was unaware of a threat of abuse facing M.S.

**{¶65}** Having determined M.S.'s claims against Pastor Thayer were without merit, any claims against the Church were, *a fortiori,* likewise without merit.

**{¶66}** The fifth, sixth, seventh, and eighth assignments of error are overruled.

IX

**{¶67}** In her final assignment of error, M.S. contends the trial court erred in entering final judgment which was not in accordance with the jury verdict. We agree.

**{¶68}** Interrogatory Three instructed the jury to determine "the amounts of damages, if any, to the plaintiff proximately caused by the sexual assault and battery committed by" Harvey. The jury found total damages to M.S. in the amount of $175,000, on count one. Likewise, in response to Interrogatory Four, which instructed the jury to determine "the amounts of damages, if any, to the plaintiff proximately caused by the intentional infliction of emotional distress by" Harvey, the jury found the total damages to be $175,000, on count two. The jury completed two verdict forms consistent with the interrogatory answers. However, in its November 8, 2015 Judgment Entry on Jury Verdict, the trial court ordered: "Judgment is entered in favor of plaintiff against defendant David Harvey in the amount of $175,000." We find this to be an error.

**{¶69}** Accordingly, assignment of error nine is sustained.

**{¶70}** The judgment of the Richland County Court of Common Pleas is affirmed in part, and reversed in part and remanded for further proceedings in accordance with this Opinion and the law.

By: Hoffman, P.J.

Farmer, J.  and

Wise, J. concur